**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 23-11141 |
| | ) | |
| Douglas C. Altenberger, | ) | Subchapter V Chapter 11 |
| | ) | |
| Debtor. | ) | Honorable Judge Janet S. Baer |
| | ) | |
| | ) | Hearing: October 31, 2023, at 10:00 a.m. |

## NOTICE OF HEARING

TO: See attached list

PLEASE TAKE NOTICE that on October 31, 2023 at 10:00 a.m., the undersigned shall appear before the Honorable Janet S. Baer, or whomever may be sitting in her place and stead, **either** in courtroom 615 of the Everett McKinley Dirksen United States Courthouse, 219 S. Dearborn Street, Chicago, IL 60604, **or** electronically as described below, and will then present the *First American Bank's Objection to the Designation of the Debtor as a Small Business Debtor Under Section 1182(1) of the Bankruptcy Code*, a copy of which is attached hereto and herewith served upon you.

**Important: Only parties and their counsel may appear for presentment of the motion electronically using Zoom for Government. All others must appear in person.**

**To appear by Zoom using the internet**, use this link: https://www.zoomgov.com/. Then enter the meeting ID and password.

**To appear by Zoom using a telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID and password.

**Meeting ID and password.** The meeting ID for this hearing is **160 731 2971**, and the passcode is **587656**. The meeting ID and passcode can also be found on the judge's page on the court's web site.

**If you object to this Objection** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the Objection will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the Objection in advance without calling it.

Dated: October 20, 2023 

**FIRST AMERICAN BANK**

By: /s/ Shira R. Isenberg
   One of Its Attorneys

Shira R. Isenberg, Esq.
SMITH, GAMBRELL & RUSSELL, LLP
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606-6677
Telephone: 312.360.6000
Facsimile: 312.360.6520
sisenberg@sgrlaw.com

and

Neal H. Levin, Esq.
RIMON PC
980 North Michigan Avenue, Suite 1400
Chicago, Illinois 60611
Telephone: 312.224.0966
Facsimile: 312.878.7131
neal.levin@rimonlaw.com

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 23-11141 |
| | ) | |
| Douglas C. Altenberger, | ) | Subchapter V Chapter 11 |
| | ) | |
| Debtor. | ) | Honorable Judge Janet S. Baer |
| | ) | |
| | ) | Hearing: October 31, 2023, at 10:00 a.m. |

## CERTIFICATE OF SERVICE

I, Shira R. Isenberg, an attorney, hereby certify that on October 20, 2023, I caused a true and correct copy of the foregoing *Notice of Hearing* and *First American Bank's Objection to the Designation of the Debtor as a Small Business Debtor Under Section 1182(1) of the Bankruptcy Code*, to be filed with the Court and served upon the following parties by the manners listed.

/s/ Shira R. Isenberg

**CM/ECF Service List**

| | |
|---|---|
| Matthew Brash | mbrash@newpointadvisors.us, I003@ecfcbis.com |
| Scott R Clar | sclar@cranesimon.com, mjoberhausen@cranesimon.com; asimon@cranesimon.com |
| Shira R Isenberg | sisenberg@sgrlaw.com, bkdocketing@sgrlaw.com |
| Patrick S Layng | USTPRegion11.ES.ECF@usdoj.gov |
| Neal H Levin | neal.levin@rimonlaw.com, kellie.turner@rimonlaw.com; docketing@rimonlaw.com |

**USPS Mail Service**

Capital One Platinum
Payment Processing Center
PO Box 71083
Charlotte, NC 28272-1083

Capital One Quicksilver
Payment Processing Center
PO Box 71083
Charlotte, NC 28272-1083

Chase Credit Card
PO Box 15123
Wilmington, DE 19850-5123

Cohon Raizes & Regal
c/o Cornelius Brown
208 South LaSalle St., Suite 1440
Chicago, IL 60604

3

First American Bank
1650 Louis Ave.
Elk Grove Village, IL 60007

T2 Investments
Barrack Ferrazzano, et al.
200 W. Madison St., #3900
Chicago, IL 60603

RJA Augustine & Associates
650 E. Algonquin Rd., #300
Schaumburg, IL 60173

Douglas C. Altenberger
82 Hawley Woods Road
Barrington, IL 60010

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 23-11141 |
| | ) | |
| Douglas C. Altenberger, | ) | Subchapter V Chapter 11 |
| | ) | |
| Debtor. | ) | Honorable Judge Janet S. Baer |
| | ) | |
| | ) | Hearing: October 31, 2023, at 10:00 a.m. |

## FIRST AMERICAN BANK'S OBJECTION TO THE DESIGNATION OF THE DEBTOR AS A SMALL BUSINESS DEBTOR UNDER SECTION 1182(1) OF THE BANKRUPTCY CODE

First American Bank ("*First American*"), one of the largest creditors of Douglas C. Altenberger (the "*Debtor*"), by and through its undersigned counsel, hereby files this *Objection to the Designation of the Debtor as a Small Business Debtor Under Section 1182(1) of the Bankruptcy Code* (the "*Objection*"). In support hereof, First American states as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to sections 1334 and 157(a) of title 28 of the United States Code. This is a core proceeding pursuant to section 157(b)(2) of title 28 of the United States Code.

2. Venue is proper in this district pursuant to sections 1408 and 1409 of title 28 of the United States Code.

3. The statutory predicate for the relief requested herein is section 1182(1) of title 11 of the United States Code (the "*Bankruptcy Code*") and Rule 1020 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*").

## RELEVANT FACTUAL AND PROCEDURAL HISTORY

4. On August 24, 2023 (the "*Petition Date*"), the Debtor filed a voluntary petition for relief under subchapter V of chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*").

5. The Debtor elected to reorganize under Subchapter V of chapter 11 of the Bankruptcy Code.

6. Matthew Brash was appointed as the Subchapter V Trustee on August 29, 2023 (ECF 8).

7. The Debtor identified First American as a creditor in his Petition (ECF 1).

## THE UNDERLYING JUDGMENT AND POST-JUDGMENT PROCEEDINGS

8. On August 6, 2019, a judgment (the "*Judgment*") was entered in the Circuit Court of Cook County (the "*Cook County Court*") against the Debtor and certain other individuals that had guaranteed a loan made by First American to Poplar Creek, LLC. The Judgment was in the amount of (1) $658,700.21 (comprising of 10% of the outstanding principal amount of the loan); (2) $1,000,832.44 (comprising all accrued interest on the loan as of April 16, 2019); (3) $246,361.28 (comprising of the payment of all real estate taxes First American made to preserve the premises); and (4) additional interest, expenses and attorney's fees that continue to accrue in connection with enforcement.

9. The judgment debtors (including the Debtor) filed a motion for reconsideration of the Judgment. The motion for reconsideration was denied on November 5, 2019. The judgment debtors (including the Debtor) then appealed the Judgment (including the denial of the motion for reconsideration). On November 23, 2020, the appellate court affirmed the Judgment, rejecting all of the judgment debtors' arguments. On December 28, 2020, the appellate court issued its

2

modified opinion (the "*Modified Opinion*").  Pursuant to the Modified Opinion, the appellate court clarified that First American can collect the 10% principal portion of the Judgment from *each* of the judgment debtors (including the Debtor).

10. The Judgment remains unsatisfied in its entirety.  Rather than pay the Judgment, the judgment debtors (including the Debtor) evaded citation discovery and otherwise concealed and fraudulently transferred their assets to relatives in continuing efforts to avoid paying First American the Judgment.

11. On December 18, 2020, the Judgment Debtors filed their *Judgment Debtors' Petition for Satisfaction of Judgment or in the Alternative Application of Credits Against the Judgment* (the "*Petition for Satisfaction*"), seeking an order of the Cook County Court that the Debtor (and the other judgment debtors) had satisfied the Judgment in full.

12. On February 21, 2023, in a 25-page comprehensive and well-reasoned decision, the Cook County Court denied the Petition for Satisfaction in its entirety, finding that the judgment debtors (including the Debtor) still owed the Judgment in full, plus additional post-judgment interest and costs that had been accruing since entry of the Judgment.  Importantly, the Cook County Court found that the judgment debtors' expert witness utterly failed to support the judgment debtors' arguments, noting that he "lacked historic or practical experience valuing, marketing, or selling TIF Notes, making his testimony superficial and speculative."

13. The judgment debtors (including the Debtor) then appealed that decision and sought a delayed stay of the post-judgment proceedings pending their appeal.  When the Cook County Court denied the requested stay on August 17, 2023, the Debtor filed a Chapter 11 case in order to obtain the stay that the Cook County Court denied.[1]

---

[1] The Debtor's bankruptcy filing was not the only one to come out of the denial of the stay by the Cook County Court.  Diana J. Moser (wife of deceased judgment debtor George A. Moser) filed her Chapter 11 case on August 28,

3

## THE DEBTOR'S SCHEDULES

14. The Debtor filed his schedules (the "*Schedules*") on September 25, 2023 (ECF 23).

15. As discussed below, however, the Debtor intentionally failed to include liquidated post-judgment interest with respect to several claims, including First American's. Once those amounts are included, the Debtor exceeds the debt limits for Subchapter V eligibility.

## ARGUMENT

**A.   The Debtor's Non-Contingent Liquidated Debt Totals More than $7,500,000.**

16. Section 1182(1)(A) of the Bankruptcy Code provides that a "debtor" for purposes of Subchapter V "means a person engaged in commercial or business activities . . . that has aggregate noncontingent liquidated secured and unsecured debt as of the date of the filing of the petition or the date of the order for relief in an amount not more than $7,500,000 (excluding debts owed to 1 or more affiliates or insiders) not less than 50 percent of which arose from the commercial or business activities of the debtor." 11 U.S.C. § 1182(1)(A).

17. Pursuant to Bankruptcy Rule 1020(b), the United States Trustee, or any party in interest, may object to a debtor's designation as a small business case or as a debtor under Subchapter V within thirty days of the conclusion of the meeting of creditors.

18. The Debtor bears the burden of demonstrating that he is eligible to proceed under Subchapter V. *See, e.g.*, *In re Evergreen Site Holdings, Inc.*, 2023 Bankr. LEXIS 1649, at *20 (Bankr. S.D. Ohio June 21, 2023) ("[T]he Court concludes that the Debtor bears the burden of establishing its eligibility to proceed under Subchapter V of Chapter 11."); *In re Hillman*, 2023

---

2023, which is pending in front of Judge Deborah Thorne (Case No. 23-11317). Judgment Debtor George M. Moser filed a chapter 7 case earlier, on May 3, 2023, which is pending in front of Judge Donald Cassling (Case No. 23-05919). First American recently filed a complaint objecting to George M. Moser's discharge, asserting that his chapter 7 filing was part of a scheme to defraud his creditors (including First American) by concealing the source of funds he used to fund his lifestyle while claiming he had no money to pay the Judgment. *See* Adv. Case No. 23-00314.

4

Bankr. LEXIS 1448, at *8 (Bankr. N.D.N.Y. June 2, 2023) ("[T]his Court finds that once an objection to a subchapter V designation arises it is the debtor's burden to establish eligibility."); *Nat'l Loan Invs., L.P. v. Rickerson (In re Rickerson)*, 636 B.R. 416, 422 (Bankr. W.D. Penn. 2021) ("The Court believes the majority view on this issue to be the correct one and therefore finds that the debtor has the burden of proof to demonstrate that she is eligible to proceed under Subchapter V."); *In re Vertical Mac Constr., LLC*, 2021 Bankr. LEXIS 2285, at *4 (Bankr. M.D. Fla. July 23, 2021) ("If a party challenges the debtor's Subchapter V election, the debtor has the burden of proving eligibility."); *In re Port Arthur Steam Energy, L.P.*, 629 B.R. 233, 235 (Bankr. S.D. Tex. 2021) ("If a party-in-interest objects, the debtor bears the burden of proving eligibility under Subchapter V."); *In re Blue*, 630 B.R. 179, 187 (Bankr. M.D.N.C. 2021) ("This Court agrees with those courts concluding that the debtor bears the burden of proof to establish eligibility to proceed under subchapter V."); *In re Blanchard*, 2020 WL 4032411, at *2 (Bankr. E.D. La. July 16, 2020) ("When a debtor's eligibility to file under a particular chapter of the Bankruptcy Code is challenged, the burden is upon the debtor to establish such eligibility.") (citations omitted).

19. As stated by the court in *In re Phenomenon Marketing & Entertainment, LLC*, 2022 Bankr. LEXIS 1189 (Bankr. C.D. Cal. Apr. 28, 2022):

> Consistent with the vast majority of courts that have addressed the issue, the Court finds it appropriate to place the burden of establishing eligibility for Subchapter V upon the debtor, not an objecting creditor. As noted, Subchapter V affords debtors substantial benefits. Certain of those benefits, such as the elimination of the absolute priority rule, inure to the detriment of creditors. In exchange for receiving these benefits, it is reasonable to require the debtor to prove that it is eligible to proceed under Subchapter V. In addition, allocation of the burden of proof to the debtor is consistent with cases finding that a debtor generally bears the burden of proving its eligibility to proceed under a particular chapter of the Bankruptcy Code.

*Id.* at *5-*6.

20. To determine whether the Debtor is eligible to be a debtor under Subchapter V, the Court must first determine that the Debtor's non-contingent and liquidated debt do not exceed $7.5 million.

21. There are limited cases analyzing eligibility for the Subchapter V designation based on exceeding the debt limit. Most are found in cases filed under Chapters 12 and 13.

22. In *In re Parking Management*, 620 B.R. 544 (Bankr. D. Md. 2020), the court ultimately found that the debtor did not exceed the debt limit because lease rejection claims and PPP claims were clearly contingent and not to be counted toward the debt limit. *See id.* at 560. In so finding, the Court stated that "[c]ourts generally hold that "the key factor in distinguishing liquidated from unliquidated claims is not the extent of the dispute nor the amount of evidence required to establish the claim, but whether the process for determining the claim is fixed, certain, or otherwise determined by a specific standard.'" *Id.* at 559.

23. Recognizing that there were not many decisions addressing the debt limit eligibility requirements of Subchapter V, the *Parking Management* court noted that "[m]any cases . . . have addressed similar eligibility debt limitation language under Chapters 12 and 13" and looked to those "decisions for guidance." *Id.* at 550.

24. As the *Parking Management* court found:

> In making the [debt limit] determination, however, the court: "should neither place total reliance upon a debtor's characterization of a debt nor rely unquestionably on a creditor's proof of claim, for to do so would place eligibility in control of either the debtor or the creditor. At a hearing on eligibility, the court should thus, canvass and review the debtor's schedules and proofs of claim, as well as other evidence offered by a debtor or the creditor to decide only whether the good faith, facial amount of the debtor's liquidated and non-contingent debts exceed statutory limits."

*Id.* at 550 (quoting *Barcal v. Laughlin (In re Barcal)*, 213 B.R. 1008, 1015 (B.A.P. 8th Cir. 1997)); *see also In re Kelly*, 2018 Bankr. LEXIS 2755, at *5 (Bankr. D. Md. Sept. 11, 2018) (finding that

6

the bankruptcy court can review a debt scheduled as "unknown" or "unliquidated" when it appears to a legal certainty to be owed in an amount other than what the debtor maintains).

25.    Here, the Debtor lists First American's claim as "disputed" but not as "contingent." Disputed is not the same as contingent. *See, e.g.*, *In re Corson*, 2004 Bankr. LEXIS 2617, at *14-*15 (Bankr. E.D. Penn. June 25, 2004) ("[A] state court judgment entered prepetition against a debtor will render the claim noncontingent and liquidated, even if on appeal. The appeal only renders the claim 'disputed.'").[2]

26.    A dispute over a claim does not render the claim contingent. *See In re Pennypacker*, 115 B.R. 504, 507 (Bankr. E.D. Pa. 1990) (rejecting argument that all disputed debts are contingent); *In re Albano*, 55 B.R. 363, 368 (N.D. Ill. 1985) ("Merely because a [chapter 13] debtor disputes a debt, or has defenses or counterclaims, that does not render that debt contingent or unliquidated.").

27.    The term "liquidated" generally refers to a claim's value and the ease with which that value can be ascertained. *See Stebbins v. Artificial Horizon, Ltd.*, 2016 U.S. Dist. LEXIS 34680, at *18 (E.D.N.Y. Mar. 17, 2016) ("The terms liquidated and unliquidated generally refer to the value of a claim or interest, the size of the corresponding debt, and the 'ease with which the value can be ascertained.'"). A claim is readily ascertainable "where the claim is determinable by reference to an agreement or by simple computation." 2-109 Collier's on Bankruptcy P 109.06[2][c] (2023 ed.); *see, e.g.*, *In re Barcal*, 213 B.R. at 1014 ("The key factor in distinguishing liquidated from unliquidated claims is whether the process for determining the claim is fixed, certain, or otherwise determined by a specific standard.").

---

[2]    As discussed above, the Judgment in this case is not on appeal. It has been affirmed by the Illinois Appellate Court.

28. While First American is aware of no reported cases under Subchapter V that deal with whether post-judgment interest is part of the liquidated claim for purposes of calculating debt limit eligibility pursuant to section 1182 of the Bankruptcy Code, this precise issue has been decided in numerous cases with respect to debt limit eligibility for Chapter 13. *See, e.g.*, *In re Cogswell*, 652 B.R. 179, 181 (Bankr. E.D. Mich. 2023) (holding that the amount of a prepetition judgment should include post-judgment interest even if that amount must be calculated, and finding in that case that the creditor miscalculated the amount of post-judgment interest); *Stebbins v. Artificial Horizon, Ltd.*, 2016 U.S. Dist. LEXIS 34680, at *18-*19 (holding that "[i]f a claim's value is 'easily ascertainable' it is 'generally viewed as liquidated'" and finding that the claim in the case was liquidated by looking at the judgment and adding "a computation of interest") (citation omitted); *In re Moore*, 2012 Bankr. LEXIS 1538, at *19 (Bankr. N.D.N.Y. Apr. 10, 2012) (indicating that the claim amount for purposes of chapter 13 debt limit eligibility must include "the interest that accumulated on the judgment up to the date of [the bankruptcy] filing"); *Nichols v. Whipple (In re Nichols)*, 2007 Bankr. LEXIS 4898, at *24 (9th Cir. B.A.P. Jan. 3, 2007) (holding that when post-judgment pre-petition interest on the judgment was calculated and added to the claim, the debtor exceeded the debt limit for chapter 13 eligibility); *In re Corson*, 2004 Bankr. LEXIS 2617, at *8 (Bankr. E.D. Penn. June 25, 2004) (holding that the debtor failed to include post-judgment interest up to the petition date and when such interest is added into the amount of the claim, it caused the debtor's total debt to exceed the amount for chapter 13 eligibility); *In re Cookus*, 2004 Bankr. LEXIS 2399, at *10 (Bankr. D. Or. Dec. 30, 2004) ("Accrued interest, when omitted from debtor's schedules, should be included in the calculation of total debt for purposes of § 109(e) when the amount is readily determinable."); *In re Snell*, 227 B.R. 127, 129 (Bankr. S.D. Ohio 1998) (holding that "the judgment is specific as to the amount awarded. Interest which

8

has accrued on the judgment is readily and precisely determinable. Accordingly, the debtor's obligation to the Cuervos is liquidated").

29. As noted above, in Subchapter V cases, courts have looked to Chapter 13 debt limit eligibility cases and it would be appropriate to do so here as well.

30. Total non-contingent, liquidated claims against the Debtor (so far), when including post-judgment interest that is included in the claims of First American and T2, are as follows:[3]

| Claim Holder | Amount of Claim |
|---|---|
| Wells Fargo Auto | $13,953.44 |
| Capital One Platinum | $1,553.04 |
| Capital One Quicksilver | $2,349.55 |
| Chase Credit Card | $37,772.78 |
| Cohon Raizes & Regal | $42,000.00 |
| Douglas Lee | $25,000.00 |
| First American Bank | $3,097,707.01 |
| Nixon Peabody | $33,231.44 |
| RJA Augustine & Associates | $2,500.00 |
| T2 Investments ("*T2*") | In excess of $3,994,422.09 |
| **Total** | **In excess of $7,250,489.35** |

31. The liquidated amount of First American's claim includes all post-judgment interest that has accrued since the entry of the Judgment on August 6, 2019 though the Debtor did not include the accrued interest on the Schedules. *See* 735 ILCS 5/2-1303(a) (providing that judgments "shall draw interest at the rate of 9% per annum from the date of the judgment until satisfied"). The post-Judgment interest that has accrued on the Judgment totals $1,191,813.09, bringing the total of First American's liquidated non-contingent claim to $3,097,707.01.[4]

---

[3] Additional proofs of claim have been filed by Capital One N.A., by American InfoSource as agent. It is not clear whether those proofs of claim supersede the Schedules or are additional claims. In any case, any filed proofs of claim not already included in the Schedules will only increase the claim total.

[4] First American plans to file a proof of claim in this case that will include the post-Judgment interest and also additional attorney's fees and costs of collection as permitted by the Judgment.

9

32.     The judgment of T2 also includes post-judgment interest that the Debtor failed to calculate and include in the Schedules.  As set forth in T2's claim filed in the probate case of one of the Debtor's co-judgment debtors with respect to the T2 judgment, as of April 13, 2022 (over one year prior to the Petition Date), the liquidated T2 claim was already $3,994,422.09.  *See* T2 claim filed in the probate case of George A. Moser (Cook County Case No. 2022-P-00199), a true and correct copy of which is attached hereto as **Exhibit A**.  Additional post-Judgment interest has accrued on the T2 judgment and, upon information and belief, such interest puts the Debtor over the Subchapter V debt limit.

33.     Accordingly, including post-judgment interest on the claims of First American and T2 results in more than $7.5 million in claims, making the Debtor ineligible for a Subchapter V case.

**B.     The Debtor Is Not Engaged in Business in Connection with the Champaign Project.**

34.     In addition to exceeding the debt limit for a Subchapter V filing, the Debtor is also not "engaged in commercial or business activities" as required by section 1182(1)(A) of the Bankruptcy Code.

35.     In the *Debtor's Motion for Extension of Time To File Schedules and Statement of Financial Affairs* (ECF 9), the Debtor claimed that he "has been and plans to be engaged in business in connection with a development project in Champaign, Illinois known as 401 Neil LLC." ECF 9, at ¶ 7.

36.     In the Debtor's first Section 1188(c) Report (ECF 31), the only mention of any commercial or business activities is a few words in the last paragraph of the report, indicating that the Debtor's chapter 11 plan would include "his disposable income from employment, as well as the development of 401 and disposition of the Appeal." ECF 31, at ¶ 7.

10

37. The Debtor is an individual W-2 employee and is not engaged in any ongoing commercial or business activities to reorganize. The Debtor has no equity or ownership interest in his current employer (Staffing Network). The Debtor has not established any connection between his current employment and his stagnant project in Champaign, Illinois (the "*Champaign Project*"), nor do any claims set forth in the Schedules have any relation to the Champaign Project.

38. As acknowledged by the Debtor, the bankruptcy case was filed not in order to reorganize or wind down the Champaign Project, but rather due to the Judgment in First American's favor entered against the Debtor. *See* ECF 31, at ¶ 4. That does not rise to an activity relative to a small business.

39. The Champaign Project has never been anything other than a vacant lot since the Debtor became involved with it in 2019. Indeed, as First American has stated in the post-judgment proceedings, the Debtor began the Champaign Project (and gave a majority of his interests to his wife for no consideration) in order to shield his assets from collection of the Judgment by First American and also to use as his personal piggy bank during the citation proceedings. Indeed, the Debtor has been funneling his money through these entities in order to continue living his lifestyle, all while refusing to pay the Judgment owed to First American.

40.     As for the 401 Neil Entities,[5] the Debtor (through a trust) only has a 17.333% interest in one of the passive holding entities as set forth in the following organization chart.



41.     Even the Debtor's *Amended Exemption Schedule* filed in the Cook County Court earlier this year only alleges that he holds a 20% interest in "North Neil Street LLC"[6] and valued that interest at only $100.  Hardly the value he would have given a true commercial activity that he was currently engaged in.  A true and correct copy of the Debtor's Exemption Schedule is attached hereto as **Exhibit B**.

42.     The 401 Neil Entities themselves disclaim that the Debtor has any membership or distributional interests in any of the entities.  As set forth in a response by the 401 Neil Entities to First American's motion seeking a charging order against the 401 Neil Entities in the Cook County Court: "[The Debtor] does *not* own any distribution interest in any of the Entities.  [The Debtor] does not own a membership interest in Holdco.  [The Debtor] does not own a membership interest

---

[5]     The 401 Neil Entities include 401 North Neil Street, LLC, 401 North Neil Fundco I, LLC, 401 North Neil Holdco, LLC and Neil Street Sponsorco, LLC.

[6]     None of the 401 Neil Entities are named "North Neil Street LLC" and First American believes that the Debtor was instead referring to his trust's 17.333% percent interest in Neil Street Sponsorco, LLC.

in 401 Neil. [The Debtor] does not own a membership interest in Sponsorco." *See* Response, a true and correct copy of which is attached hereto as **Exhibit C**.

43. While the Debtor is the manager of the 401 Neil Entities, he is not paid or otherwise compensated for these services and one would be hard pressed to determine what exactly the Debtor has done with the 401 Neil Entities other than use them to funnel cash to himself in order to keep his assets out of reach of his judgment creditor, First American. Indeed, prior to the Petition Date, First American had filed a complaint seeking to avoid the transfer of the interests in Neil Street Sponsorco, LLC from the Debtor to his wife as a fraudulent transfer.

44. Even activity shortly before the Petition Date does not change this conclusion. On June 6, 2023, the Debtor sent a proposed term sheet for financing for the entities comprising the Champaign Project to the City of Champaign. *See* **Exhibit D**, attached hereto. However, when First American's counsel asked the 401 Neil Entities' counsel about the financing, he responded (just *one day* prior to the Petition Date) and stated that the financing never occurred and that the 401 Neil Entities did not receive the funding. *See* **Exhibit E**, attached hereto. A phone call to the alleged proposed lender confirmed that it had no dealings with either the Debtor or anyone else on behalf of the 401 Neil Entities. In addition, another phone call from First American to the City of Champaign revealed that there had been zero activity related to the Champaign Project since those early June 2023 e-mails.

45. The 401 Neil Entities are in default of the development agreement with the City of Champaign and will likely have to turn over the land back to the City of Champaign. As confirmed by the Debtor at the 341 Meeting of Creditors, he had only recently re-started a dialogue with the City of Champaign with respect to the Champaign Project and he acknowledged that the Champaign Project is still subject to being shut down entirely, with the real estate that was

13

supposed to be the site of a future hotel reverting back to the City of Champaign as provided in the development agreement.

46. Clearly, the Debtor did not file this case due to anything having to do with the Champaign Project, which has been dormant since it began. The reason the Debtor filed this case – as acknowledged in his filings – was in order to stay collection efforts with respect to the Judgment held by First American. The Judgment has nothing to do with the Champaign Project. The Judgment was entered with respect to an entirely different loan transaction having nothing to do with any business the Debtor is currently engaged in. Nor do any of the claims listed in the Schedules have any connection whatsoever with the Champaign Project.

47. There is no ongoing business activity and the Debtor is not engaged in any commercial or business activity to reorganize for the benefit of any small business. The Debtor's filing of this case is simply another delay tactic to paying the Judgment that First American is all too familiar with. The Debtor is not eligible to proceed under Subchapter V pursuant to section 1182 of the Bankruptcy Code and the Subchapter V designation should be stricken.

## **NOTICE**

48. As required by Bankruptcy Rule 9014, First American has provided notice of this Objection to all counsel of record, the Debtor, the Debtor's attorney, the United States Trustee and all creditors included on the Debtor's List of 20 Largest Creditors filed under Bankruptcy Rule 1007(d) (ECF 1).

**WHEREFORE**, First American respectfully requests that the Court (i) determine that the Debtor is not eligible for relief under Subchapter V; and (ii) grant such other and further relief as the Court deems just and proper.

Dated:  October 20, 2023                **FIRST AMERICAN BANK**

By: /s/ Shira R. Isenberg
     One of Its Attorneys

Shira R. Isenberg, Esq.
SMITH, GAMBRELL & RUSSELL, LLP
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606-6677
Telephone:  312.360.6000
Facsimile:   312.360.6520
sisenberg@sgrlaw.com

and

Neal H. Levin, Esq.
RIMON PC
980 North Michigan Avenue, Suite 1400
Chicago, Illinois 60611
Telephone: 312.224.0966
Facsimile: 312.878.7131
neal.levin@rimonlaw.com

15